■ HELEN A. S., Respondent-Appellant v WERNER R. S., Appellant-Respondent.—In an action for a divorce and ancillary relief, the defendant husband appeals, as limited by his brief, from (1) stated portions of a judgment of the Supreme Court, Westchester County (Klein, J.H.O.), entered January

27, 1989, which, *inter alia,* (a) awarded the plaintiff wife maintenance in the sum of $150 per week for a period of two years following her departure from the marital residence and legal fees in the sum of $16,949.24, (b) equitably distributed the furniture and furnishings contained in the marital residence, (c) directed that certain mortgages placed on the marital residence and a judgment in favor of Dr. Edward Holtzman against the defendant were to be paid out of his share of the net proceeds of its sale, (d) directed a distributive award to the plaintiff based on these proceeds, and (e) failed to address the issue of exclusive possession of the marital residence, and (2) so much of an order of the same court entered January 27, 1989, as, upon reargument, adhered to the determination in an order dated October 3, 1988. The plaintiff wife cross-appeals from so much of the judgment as allegedly failed to fashion adequate arrangements to ensure that the defendant will pay the plaintiff her share of the net proceeds of the sale of the marital residence, as directed.

Ordered that the appeal from the order dated January 27, 1989, is dismissed, as that order was superseded by the judgment; and it is further,

Ordered that the judgment is affirmed insofar as appealed and cross-appealed from; and it is further,

Ordered that the plaintiff is awarded one bill of costs.

The parties were married in 1969 and their union produced two children who were 13 and 17 years old, respectively, at the time of trial. The defendant, an American citizen of Swiss descent, earned approximately $35,000 per year prior to the time of trial from his primary employment and he also conducted a furniture and office supply business out of the marital residence. The plaintiff, who had an employment history in retail sales, earned approximately $16,000 in 1986 and had also been responsible for maintaining the furniture samples displayed for sale from the marital residence. This home had a stipulated value of $340,000 at the time of trial, although it was encumbered by outstanding mortgages executed by the defendant subsequent to the commencement of the instant action.

In March of 1981, the defendant informed the plaintiff that he desired a separation pursuant to an agreement he had already prepared. The plaintiff purportedly was unaware of any significant marital problems and the following month, in a state of "emotional overload", while inside the marital residence, she donned her wedding gown and attempted sui-

cide by stabbing herself in the chest. She recovered from her physical wounds but her emotional condition caused her to come under the care of Dr. Edward Holtzman, a psychiatrist, who provided professional services for more than four years at a cost in excess of $34,000.

Following her failed suicide attempt, the plaintiff commenced the instant divorce action on grounds of alleged cruel and inhuman treatment. The defendant counterclaimed for a judgment of divorce on the same ground. After pending for approximately six years, the matter was tried before a Judicial Hearing Officer whose decision, as adhered to on the defendant's subsequent motion for reargument, was memorialized in the judgment challenged on appeal.

Initially, the defendant contends that the court erred in directing that certain mortgages and a judgment were to be paid solely out of his share of the net proceeds of the sale of the marital residence. At the commencement of this action in March 1981 the marital residence, which was purchased for $162,000, was encumbered by two mortgages totaling more than $73,000. Subsequent to the commencement of the action and after the plaintiff had filed a lis pendens with regard to the marital home, the defendant further encumbered the home by giving three mortgages aggregating $210,000 between September 1984 and March 1987. The record demonstrates that the proceeds from these mortgage loans were used solely for the defendant's benefit. There is no evidence to support the defendant's contention that the underlying loans, which were consolidated in the $150,000 mortgage, were obtained to enhance the standard of living of the plaintiff as well as himself *(see, Capasso v Capasso,* 129 AD2d 267, 293). Furthermore, we agree with the court's finding that the defendant has access to loans from abroad which he is under no obligation to repay and which appear to inure primarily to his benefit alone. Therefore, since the underlying indebtedness was in pursuit of his separate interests, the trial court properly found that the mortgage obligation should be his separate liability *(see, Reiner v Reiner,* 100 AD2d 872, 874).

The court was similarly correct to hold that the defendant's indebtedness for the plaintiff's psychiatric bills constituted his separate obligation. In a prior action prosecuted by Dr. Holtzman, a judgment was entered against the defendant in the sum of $23,360, which was deemed to constitute payment for "necessaries" for which he was personally liable *(Holtzman v Stutz,* 125 AD2d 640). The defendant impleaded the plaintiff into that action, in which he made no attempt to reserve his

rights to raise this issue in the then-pending divorce action (see, Mormile v Mormile, 149 AD2d 573). Accordingly, the debt to Dr. Holtzman having been adjudicated to be the defendant's separate personal obligation in a prior action, he may not now argue that the indebtedness owed to Dr. Holtzman, which arose largely after the commencement of the instant divorce action, is anything but his separate obligation (see, Boronow v Boronow, 71 NY2d 284; McMurray v McMurray, 157 AD2d 773).

In determining whether property is separate or marital, a court should construe the term "marital property" broadly and the term "separate property" narrowly (see, Price v Price, 69 NY2d 8, 15). It is undisputed that a furniture importing and selling business was run from the marital residence. The furniture and furnishings of the house constituted not only household furnishings but was also business inventory which was displayed in the marital home/showroom. With regard to this property, the defendant was responsible for its sale and the plaintiff was responsible for keeping it in saleable condition. Generally, in distributing the property of a business in a matrimonial action, the focus should be on the evaluation and development of the business during the marriage and not on the isolated fact that it began prior to the marriage (see, Roffman v Roffman, 124 Misc 2d 636, 639). Accordingly, the distribution of this property should be left undisturbed as the court properly based its distribution on the plaintiff's contribution in services to the defendant's furniture business.

We have examined the defendant's remaining contentions, and those raised by the plaintiff on her cross appeal, and find them to be without merit. Eiber, J. P., Sullivan and Miller, JJ., concur.

Balletta, J., concurs in part and dissents in part, with the following memorandum: Several years after the plaintiff had commenced the instant divorce action, the defendant executed a mortgage of $150,000 against the marital residence. Since the defendant held title to the marital residence in his name only, he was able to execute the mortgage without the plaintiff's participation. The majority takes the position that the entire $150,000 mortgage is the sole debt of the defendant. However, for the reasons set forth below, I believe that a minimum of approximately $43,000 of that $150,000 constitutes marital debt and should be chargeable against marital assets.

The parties herein were married on April 19, 1969. In 1971,

they purchased their first home for the sum of $46,200. Through five personal loans, the defendant obtained $17,307 of the purchase price. Part of the consideration for the loans was that the defendant purchase and maintain title to the property in his own name. In 1977, the parties sold this house and bought a second home in the same area. The defendant borrowed another $25,000 to help finance the purchase of this residence and secured amendments of the prior loans so as to extend them to the second home. The various loan contracts expressly state that they were made "for the purpose of partially financing the purchase of a private dwelling". Thus, at the time this action was commenced in 1982, the defendant had obtained a total sum of over $42,300 through personal loans, which had been invested in the marital residence.

In March 1986 the defendant consolidated the above six loans into a single $150,000 loan secured by a mortgage on the marital residence. Although it is not clear how the $42,307 which was owed on the six underlying loan agreements was suddenly escalated into a $150,000 mortgage, it is evident that these original loans were for marital purposes. Accordingly, at least $42,307 of the $150,000 mortgage represents marital debt.

Apparently, the original notes (made in 1970, 1971 and 1977) were in Swiss francs and were pegged to the exchange rate. Although part of the $150,000 mortgage apparently includes an unspecified amount of unpaid principal and interest, when the six loans were consolidated, the 1986 exchange rate was utilized. Thus, it would appear that the $150,000 mortgage results in part because of the conversion of Swiss francs at an inflated rate based upon the exchange rate at the time the mortgage was placed. However, the husband never clearly explained which portion of the mortgage was directly traceable to the $42,307 and which portion represented inflation. Moreover, there was no clear explanation for the necessity of encumbering the marital residence with a $150,000 mortgage some four years after the divorce action had started.

In *Harrell v Harrell* (120 AD2d 565), this court noted that the mandate of the equitable distribution statute cannot be "avoided by the wrongful conduct of one spouse in retaining, secreting or dissipating the marital assets, and that spouse will be held accountable to the other spouse for any such actions" *(Harrell v Harrell, supra,* at 566). Since the six underlying loans were personal to the husband, I do not believe that under the above circumstances the wife should be responsible for the inflationary spiral. However, insofar as the

sum of $42,307 was clearly used for the financing of the marital residence, that amount (i.e., $42,307) should be charged against the marital assets as a marital debt.